FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

MAY 09 2016

By D. MARK JONES, CLERK
_____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| **CHRIS SEVIER, former Judge Advocate General, Assistant US Attorney, JOHN GUNTER, founder of Clean Services Foundation and Citizens United**<br><br>**V.**<br><br>**GARY R. HERBERT, in his official capacity as Governor of Utah; SEAN REYES, in his official capacity as Attorney General of Utah;** | Case: 2:16cv00386<br>Assigned To : Waddoups, Clark<br>Assign. Date : 5/9/2016<br>Description: Sevier et al v. Herbert et al |

## COMPLAINT FOR INJUNCTIVE RELIEF

*"Break a bone..and as the broken part heals it becomes the strongest part"- Eman Farouk*

NOW COMES, Chris Sevier, former Judge Advocate General and assistant US Attorney, and

John Gunter Jr., Found Of Clean Services Foundation and Citizens United, in their personal

capacities seeking an injunction to compel the Court to declare that Utah Code Ann. §

76-10-1231(1)(a)(b) and Utah Code Ann. § 76-10-1231(3)(a)(b) violate the Free Exercise Clause

of the 1st Amendment and the 14h Amendment due process and equal protection clause of the

United States Constitution, enjoining the state from enforcing it.[1] Additionally, this the cases is

brought under 42 U.S.C. § 2000bb, 1993 Religious Freedom Restoration Act, which bars the

government from imposing a "substantial burden" on the exercise of religious beliefs, but allows

such burdens if the policy or program is "the least restrictive means" that the government could

---

[1] The Plaintiffs ask the Court and the state for some leeway in pleading, while framing a case of first impression, involving addiction; neuroscience; the lack of enforcement of obscenity laws against the Tech Enterprise. Pleading here is not whimsical, reductionistic, and simplistic, even if it is common sense. This case involves matters that are of great importance to the public involving a case that amounts to modern day Tobacco litigation and slavery matters that trigger the 13th Amendment. .

use to achieve a "compelling government interest." The State lacks a compelling interest to

defend "pornographic speech" over "religious speech" by putting the consumers in the

burdensome position where they themselves have to seek out and demand filter installation by

the ISP and Device Maker, who must comply under Utah Code Ann. § 76-10-1231(1)(a)(b), only

to then be exposed to paying a state authorized "filter fee" under Utah Code Ann. §

76-10-1231(3)(a)(b), and somehow that is all supposed to miraculously accord with free speech.

Neither Utah Code Ann. § 76-10-1231(3)(a)(b) nor Utah Code Ann. § 76-10-1231(1)(a)(b) are

the least restrictive means to regulate religious speech because it puts the burden on the wrong

party and class of people. But the Child Online Filter Act (COFA), presented by the Plaintiffs,

provides a viable solution that is the least restrictive means. The lawmakers need to stop putting

the interest of the Tech Enterprise over families, and start to honor their oaths of office. It is to

the point of absurdity.

## SECTION I. NATURE OF THE CASE

1. According to the United States Supreme Court, making the Device Maker, (cell phone and

computer manufacturers) and Internet Service Providers (ISPs) sell their products with preset

filters where there is a filter deactivation fee, not a filter installation fee is the least restrictive

means. *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 122 S. Ct. 1700, 152 L. Ed. 2d 771

(2002). The Plaintiffs will absolutely press this action to go to the Supreme Court at all costs.

The state cannot pass a law that unduly burdens religious liberties at the expense of promoting

unprotected/harmful obscene speech without (1) promoting obscenity in violation of the spirit of

Utah Code An. §§1201-1235 and 18 USC §§ 1460-1470 and without (2) offending a host of

Constitutional provision.   That is exactly what Utah Code Ann. § 76-10-1231(3)(a)(b)

accomplishes by authorizing ISPs and Device Makers to charge a filter installation fee. This

phobia manifested by the legislatures about regulating the Tech Companies in a way that accords

with common sense must end. Children and families are more important that the egos of the

Tech Enterprise and the individuals in office who are refusing to really regulate them.

2. The Utah Code should make ISPs and Device Makers sell their products with filters and

charge a deactivation fee to (1) offset the secondary harmful effects of pornography that has been

long since recognized by the Supreme Court; [2] to (2) combat the "public health crisis"

memorialized in SCR 9; and to (3) make the Tech companies comply with the display statute,

under Utah Code Ann. § 76-10-1228, the harmful to minor statutes, Utah Code §§

---

[2] The USSC and other courts have recognized the harmful secondary effects of"hard-core porn shops" and other "sexually oriented businesses" that specialize in pornography and commercial nudity, upholding the right of cities and counties to enact zoning and licensing ordinances based on reports and studies of their destructive impact. There were at least forty such studies and reports of municipalities and state agencies that have documented such crime impacts and urban blight, including those reports from such diverse communities as Los Angeles, Cleveland, New York City, Phoenix, Minneapolis, Indianapolis, Seattle, Oklahoma City, Houston, Dallas, El Paso, Las Vegas, Alliance, Ohio, Newport News, Virginia, Manatee County, Florida, Adams County, Colorado, and New Hanover County, North Carolina. The USSC said, "The sum of experience...affords an ample basis for legislatures to conclude that a sensitive, key relationship of human existence, central to family life, community welfare, and the development of human personality, can be debased and distorted by crass commercial exploitation of sex. The States [and Congress] have the power to make a morally neutral judgment that public exhibition of obscene material, or commerce in such material, has a tendency to injure the community as a whole, to endanger the public safety, or in Chief Justice Warren's words, to jeopardize, States' "right. ..to maintain a decent society." *Paris Adult Theatre Iv. Slaton,* 413 US 49, at 63,69 (1973). As noted by the Supreme Court in *Roth v. United States,* 354 U.S. 476, at 485 n. 15 (1957), and *New York v. Ferber,* 458 U.S. 747, at 754 (1982), there is an international Treaty that can be used by U.S. and other Nations to cooperate in identifying and prosecuting obscenity offenses. The original Treaty is called "Agreement for the Suppression of the Circulation of Obscene Publications", signed at Paris, May 4, 1910 In the U.S, it is reported at 37 Stat. Pt. 2, p. 1511, Treaties in Force 209 (U.S. Dept. of State), Treaty Series 559. The 1949 Protocol transferred the recording and tracking functions to the United Nations. There are now over 130 signatory countries. Pursuant to the spirit of these prosecutorial treaties, other countries can follow our standard and imposed requirements that all devices be sold with filters in effect.

76-10-1206,1231,1233, and the Federal Obscenity Code 18 USC §§1460-1470 in general. Here

is the unpopular truth: the passing of SCR 9 is hollow insofar as the obscenity code and Supreme

Court have long since found that the pornography online is devastating the public's health.[3]

---

[3] PAT TRUMAN AND DAWN HAWKINS AT THE NCOSE ARE SEETHING FRAUDS
WHO ENGAGE IN MISDIRECTIONS TO INCREASE DONATIONS BY FLOATING
SHAME SOLUTIONS TO PORNOGRAPHY AND HUMAN TRAFFICKING AT THE
EXPENSE OF CONSTITUTIONAL ONES DUE TO AN EGOISM THAT MAKES THEIR
ORGANIZATION A THREAT TO THE PUBLIC'S HEALTH: The sham victor of hollowness
under SCR 9 is an understatement. The National Center Of Sexual Exploitation is fannying about
the Country merely seeking donations to bankroll the lavish lifestyles of Pat Truman and Dawn
Hawkins, who live in Washington DC, not Utah. Both Pat Truman and Dawn Hawkins are the
poster children of absolute incompetency when it comes to fighting pornography and sex
trafficking in a meaningful and valid way. Pat Truman and Dawn Hawkins do not really want to
see viable solutions to the porn pandemic because, like pharmaceutical companies they prefer if
people stay sick. Due to delusions of grandeur, these individuals see themselves as lifelong zars
of some kind of anti-porn movement, which gives them a mind numbing sense of entitlement, at
the expense of material injuries. Pat Truman and Dawn Hawkins would prefer to see themselves
speaking at engagement and collecting fat donations instead of seeing real results to the point
that they have continuously engaged in malicious interference with ongoing litigation - to
include this action. No donor who is really concerned with families should support their fraud
mill of total ineptness any more than they support enable predatory pornographers. Pat Truman is
single handedly the greatest threat to real solutions to combat porngraphy because he places his
personal job security over the safety and welfare of children and families due to an ego that
makes Steve Jobs look humble by comparison. Besides being old, inept, and out of touch, Pat
Truman does not only not understand the law, he literally misrepresents it because, he does not
really want to see pornography pushed underground. He has personally engaged in a host of
witness and evidence tampering to suite the interest of his organization in a way that is patently
outrageous. In light of First amendment heightened scrutiny considerations, there are only a few
limited ways to oppose pornography, and the Plaintiffs demands accord with solutions that exist
in Constitutional reality and not the luny unicorn land that Dawn Hawkins and Pat Truman
persist in an ongoing basis because of a delusion view that they are the exclusive leaders of an
anti-porn movement that will ultimately abolish it altogether. Meanwhile, there are real people
who are suffering at the hands of porn content creators and traffickers, who are being aided and
abetted by the Tech Enterprise because the Government refuses to pass laws that regulate them
in a manner that accords with the United States Constitution. The Plaintiffs have appeared here
at great personal expense to ask that the Court cure their personal injury and actually protect the
public health in a lawful and material manner. Pat Truman and Dawn Hawkins have already
attempted to interfere with this litigation - like they have in other cases - which nearly compels
the Plaintiffs to seek an injunction against them personally and haul them into Federal Court in
Washington DC, so that they can be exposed. The Plaintiffs are happy to feed Pat Truman and
Dawn Hawkins to the liberal media do to their ongoing pattern of malicious interference with

Another resolution is not going to actually move the needle in terms of providing a real solution to protect kids, families, and consumers. Now that the State has declared that pornography on filterless products is a products, they cannot say that it did not really mean it in light of this action.

3. Authorizing the Tech Company to charge a filter fee as invalid as the Obama Administration forcing the Little Sisters of the Poor subsidize contraceptives and abortion services for employees or face fines from the IRS. *Little Sister Of The Poor v. Burwell*, 794 F3rd 1151 (10th Cir. 2015); *Little Sister Of The Poor v. Burwell*, 134 SCT 1022 (2014) Likewise, placing the Plaintiffs in a position where the options are to (1) be exposed to obscenity or (2) pay a government authorized fee is unjust on its face. This is especially true since pornography is to support pornography is to support sex trafficking, violence towards women, and child exploitation. As a former member of the Military, Plaintiff Sevier does not want to see law enforcement placed in an increased position of danger that filterless devices cultivates.

4. Just as Hobby Lobby was not forced to pay for Obama's mandated abortion pills, the Plaintiffs should not be required to pay the filter fee or else be subjected to pornography because the state lacks a compelling interest in refusing to make Device Makers and ISPs sell their products with preset filters that could be subjected to deactivation sin tax as a matter of equal treatment of strip clubs. *Burwell v. Hobby Lobby,* 134 SCT 2751 (2014). In short, the state is not regulating the Device Makers and ISPs in the right way. The time for change is now.

---

Article III litigation that amounts to criminal obstruction of justice. The Plaintiffs have prepared a file to provide to the DOJ and subject Pat Truman and Dawn to comprehensive litigation in District Court in Washington DC for their replete unethical misconduct and self-serving obstruction activity. Their efforts are witness intimidation is both obscene and illegal and will not be tolerated by the Plaintiffs for cause.

6

5. Exposure to pornography on filterless products adversely impacts the emotional,

relationsional, spiritual, reproductive, and mental health of consumers. In support of this cause of

action, more 37 declarants, who cover 16 segments of the public sector across a vast spectrum,

have provided testimony, demonstrating that the Tech companies filterless products have created

a sexual holocaust, public health crisis, and porn pandemic.[4]  (See Exhibit).

6.  Avoiding obscene speech is a fundamental right and a matter of civil rights that accords with

the first and fourteenth amendments.[5]  For the government to simply declare that pornography

---

[4] <u>SWORN STATEMENTS</u>: See the declarations provided by: (1) CEO of Fight The New Drug
Clay Olsen and 1,000 testimonials from minors; (2) Glenda Grant founder of Mothers Against
Trafficking Humans (M.A.T.H.); (3) Clean Services Foundation Founder John Gunter; (4) Form
Porn Star JanVillarubia; (5) Former Porn Star Shelley Lubben Founder Of Pink Cross
Foundation; (6) CEO of Think Atomic Ralph Yarro; (7) M.A. Denise F. Quirk; (8) LMFT Stacey
B. Thacker; (9) MFT Roberta Vande Voort; (10) LCSW Max C. Ward; (11) Founder of the
LoneStar Coalition Against Pornography LCSW Shane Adamson; (12) Founder of Lifestar
Network LCSW CSAT Dan C. Gray; (13) Founder Of Battle Plan Ministries Ordained Minister
William R. Berry; (DE 188) Middle School Guidance Counselor Matt Zollinger; (14) Former Lt.
General of the State of California and Founder of Candlelight Society John Harmer; (15) Mrs.
Minnesota Globe 2015, National Television Host, Public Advocate for Shared Hope
International Wendi Russo; (16) CEO and Chairman of Content Watch and Net Nanny Brent
Bishop; (17) Safe Libraries CEO Attorney Dan Kleinman; (18) Mayor Joaitn B. Shighini; (19)
Dr. LaNae Valentine Professor Of Women's Studies at BYU University; (20) Lauren Taylor
Dixon minor who became a Female Porn Addict; (21) The President of United Families
International Laura Bunker; (22) Sula Skiles Survivor Of Sex Trafficking; (23) Michael
Robinson CMHC, SOTP Department Of Corrections Utah State Prison Draper, Program
Director/ Clinical Therapist Supervisor. (24) The Managing Director of In Our Backyard Nita
Belles; (25) Sarah Zalonis Survivor Of Human Trafficking; (26) Lieutenant Colonel Kevin
Yates; (27) Dr. Leigh PsyD; (28) Executive Director Of Ark Of Hope Children's Mission; (29)
Tiffany Leaper Founder of Girls Against Pornography; (30) Gary Williams CEO Of Hotel
Management Company  Hilton and Holiday Inn;  (31) Tyler Gallacher, CEO Of Ever
Accountable Tech Expert; (32) Claudine Gallacher, Pornproofkids.org Mental Health Provider;
(33) Hillary Stines, Georgia Housewife and Mother of Two; (34) Carolyn Woods, Victim of
Pornography, member of girls against pornography; (35) Lance Platt, CEO of EpicVue, LLC.
(36) Angela L Krois, Anti-pornography activist in public schools. (37) Lynda Marie, Sex
Trafficking Survivors.

[5] Just as an individual has the right marry on the basis of their sexual orientation as a "personal
choice," "individual right," "existing right," and "fundamental right," consumers have the rights

that is being distributed through products that distribute all of the content on the web has created a public health crisis is simply not good enough.

7. To be fair, Governor Herbert and Attorney General Reyes are very much against human trafficking and pornography, and while the hearts of the executive branch and legislature were somewhat in the right place, when they regulated ISPs and Device Makers under Utah Code Ann. § 76-10-1231(1)(a)(b), they got it backwards. Consumers should not have to go through the burden of asking to have safety features installed to protect thems. Moreover, they should not be exposed to a government authorized fee under Utah Code Ann. § 76-10-1231(3)(a)(b) in a manner that offends the 1993 Religious Freedom Restoration Act, the 1st amendment, and 14th amendment because the legislature has decided to be bought off by the Tech Enterprise.

8. The State should not authorize and encourage the Tech Enterprise to charge a filter installation fee under Utah Code Ann. § 76-10-1231(3)(a)(b), the State could make the Tech Enterprise charge a filter deactivation fee, after making ISPs and Device Makers sell their products with preset filters. After striking down Utah Code Ann. § 76-10-1231(3)(a)(b), the state has no

---

to be shielded from obscenity that infringes upon these rights, alters sexual orientation, and violates the community standard. *Zablocki v. Redhail,* 434 U.S. 374, 384 (1978)(fundamental right); *Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 63940 (1974)(personal choice); *Loving v. Virginia,* 388 U.S. 1, 12 (1967)(existing right); *Lawrence v. Texas,* 539 U.S. 558 (2003)(intimate choice). This is not a free speech matter, it is a matter of allowing consumers to regulate their own mental health. More than that, consumers have the right to protect their own religious beliefs and the community standards. Utah Code Ann. § 76-10-1231(3)(a)(b) establishes the doctrine of pornography advanced by the proponents for a caliphate of moral relativism over Christian doctrine that discourages all forms of sex outside of marriage between one man and one woman.  The state has a compelling interest to maintain the community standard and to guard their citizens against dangerous forms of speech that could destroy their families, jobs, and overall quality of life. The law should not encourage ISPs and Device Makers to charge a fee to have the filter added, it should charge a fee to have a filter removed. In the case of minors, ISPS and Device Makers should NEVER be allowed to have the filter removed without violating. Utah Code §§ 76-10-1206,1231,1233.

alternative but to pass the Child Online Filter Act (COFA)[6] which cures the defects in Utah Code

Ann. § 76-10-1231(3)(a)(b). Other states are going to pass it regardless of what Utah does. The

Constitutional plausibility of COFA, under first amendment heightened scrutiny review, is

validated by the Supreme Court in *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 122 S.

Ct. 1700, 152 L. Ed. 2d 771 (2002). The United States Supreme Court already found that

"filters" are the least restrictive means to regulating harmful speech and that Congress can and

---

[6] CHILD ONLINE FILTER ACT: (COFA)  There is no doubt that the Governor deserves praise
for passing SCR 9, declaring that pornography is a public health crisis; even if the Supreme
Court has made that clear that pornography has secondary harmful impact for more than two
centuries. Nevertheless, the public health crisis has become much worse as a result of filterless
devices. The expansion of the internet corresponds directly with the expansion in the demand for
sex trafficking, assault in the military, and child exploitation. It is one thing to identify a
problem or public health crisis; it is another to find a solution that survives first amendment
heightened scrutiny considerations. Like the United States Supreme Court in Ashcroft v. Am.
Civil Liberties Union that struck down the Child Online Privacy Protection Act while
recommending filters regulation imposed on the Tech Enterprise as the least restrictive means to
regulating pornography on the internet, the Plaintiff's do not ask the Court to strike down Utah
Code Ann. § 76-10-1231(3)(a)(b) without turning around providing the Governor and Attorney
General with a better solution to present to the state Legislature. The solution is found in the
form of a draft bill called the Child Online Filter Act (COFA). For the sake of the children
memorialized in the testimonials provided by Fight The New Drug and Elizabeth Smart, neither
Governor Herbert nor the Attorney General should oppose this action pursuant to section Utah
Constitution Section IV. *Tri State General v. New Mexico Public Generation*, 787 F3rd1068
(2015). Instead, they should support the injunction and agree to modify the code to make it more
Constitutionally sound in order to actually cure this public health crisis in a manner that accords
with Constitutional considerations. There are many other states that are interested in passing
COFA, but pornography has particularly been a problem for Utah's citizens. Utah is perfectly
positioned to be the first state to pass the bill. Senator Lee's senior political advisor on the
Judiciary Committee agrees. The Governor should exercise his privilege to call a special
legislative session lead by Senator Weiler to repeal this provision of the obscenity code and
replace it with COFA (the Child Online Filter Act).There is no doubt that sex slavery is tied to
pornography, and both Governor Herbert and legislature have demonstrated with convincing
clarity that they are modern day William Wilberforces. They should be the first set of lawmakers
to pass COFA, which will not only lead the way for all of the other 50 states to pass COFA, it
will cause the governments around the world to create similar policies - pushing the globe back
towards innocence.

should pass filter laws that regulate the handful of readily identifiable Device Makers and ISPs.[7] The State of Utah should thank the Plaintiffs for giving it the first chance to pass COFA, since it hails to be aggressively against pornography on paper.

9. The USSC in *Ashcroft* did not suggest nor imply that a filter installation fee could be imposed on consumers by the legislature, but instead the USSC indicated that a filter deactivation fee could be codified by relying on *Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). The legislature can clearly put up barriers to make accessing pornography and prostitution hubs more inconvenient. We are never going to completely end human trafficking and pornography, but the government can reasonably restrict such criminal speech.

10. While the State of Utah is one of the first states to begin to impose filter regulations over the ISPs and Device Makers under Utah Code Ann. § 76-10-1231(1), it placed the wrong burden on the wrong class of people.  This is a burden shifting case where the freedom to choose to opt into pornography is the real liberty interest at stake, instead, of allowing the greedy, pro-porn, and indifferent Tech Enterprise to patronizingly make that choice for consumers under the false label of "freedom" in a manner that is itself really a form of sexually exploitation and infringement on consent. [8]

---

[7] *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 122 S. Ct. 1700, 152 L. Ed. 2d 771 (2002)See *Am. Civil Liberties Union v. Reno*, 31 F. Supp. 2d 473, 476 (E.D. Pa. 1999); also aff'd, 217 F.3d 162 (3d Cir. 2000) vacated sub nom. *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 122 S. Ct. 1700, 152 L. Ed. 2d 771 (2002).

[8] Although the Plaintiffs are "pro-life' when it comes to abortion (which creates two victims - one dead and one hurt), they are "pro-choice" when it comes to making ISPs and Device Makers sell their products with filters that can only be removed if the purchaser is an adult, who intentionally consent, verifies their age with the retail clerk, and assumes the risk after being issued a warning by the retailer. By making ISPs and Device Makers sell their products with filters on the front end will allow all individuals the fundamental right whether to choose to be exposed to obscene material that is the cause of the public health crisis recognized in SCR9.

11. Those who want to access pornography on devices that distribute the content on the internet should be required to take the extra steps and pay the additional fees to do so, not those who want to avoid the harmful content to begin with.

12. President Obama maybe the most irrational President we have ever had. He speaks a common sense gun control laws but fails consider the totality of the circumstances and the reasoning behind the second amendment due to a refusal to think that is truly amazing. Yet, these matters really do involve "common sense" filter regulation in a manner that is based on sound Constitutional reasoning and the rule of law.[9] Just as the President wants to make it harder to access guns, the Plaintiffs want to make it more difficult to access pornography because of its harmful downsides. The Plaintiffs demand do not offend the Second Amendment or any other Constitutional provision.

---

[9] **"COMMON SENSE" FILTER LEGISLATION**: The city counsels zone strip clubs to the hard to reach parts of the town because they want to make it inconvenient for a good reason. UCA 10-9a-501; *Schad v. Borough of Mount Ephraim*, 101 SCT 2176 (1981). Strip clubs, gay living, and obscenity are not protected forms of speech because they violate the community standards of decency, and produce secondary harmful effect, like divorce, extreme trauma, and self-entitled lunacy, like not knowing which bathroom to use. The Tech Enterprise is taking advantage of society like the auto-industry one did. Car manufacturers are required to sell vehicles with seat belts already installed to create a shield from foreseeable danger. 49 CFR part 393; U.C.A 41-6a-1628. Imagine if a car manufacturer made the consumer request to have seat belts installed and then charged an installation fee. That is effectively what Utah Code Ann. § 76-10-1231(3)(a)(b) does when it comes to filters. Without cars, there are no car wrecks, and without products that distribute the internet, there are no secondary harmful effects and public health crisis related to pornography on products that distribute the web. The Governor and legislature have a duty to make car manufacturers and products that distribute the internet sell their goods with safety features that ward off foreseeable danger. For decades the auto-industry refused to sell their products with seat belts. The auto-industry would blame "the nut behind the wheel." The tech enterprise is scapegoating their consumers and content creators, when they are the party with superseding liability who persist at the front of the causal chain. Porn content creators and copyright infringement websites are merely exploiting an unregulated platform that the Tech Enterprise has created.

11

13. <u>REMOVING THE GOLDEN HANDCUFFS</u>: This Court in this case could be the final

catalyst to allow the legislatures in every state and on the Federal level to be free from the

"golden handcuffs" imposed by tech lobbyists and the Tech Enterprise's phony first amendment

narratives that have misguided the public's perceptions. What we have is a breakdown in

Democracy that the Court and lawmakers must fix it now in curing the Plaintiff's injuries before

matters get any more out of control. Currently, we do not have a Governor of the people, by the

people, and for the people. We have a government of the Microsofts, by the Comcasts, and for

the Apples. The Tech Enterprise could careless about the health, safety, and welfare of children

and families.[10] The repeal of Utah Code Ann. § 76-10-1231(3)(a)(b) and the passage of COFA

makes the Tech companies care and protects children, like the ones who have aligned with Fight

The New Drug. The Tech Enterprise only care about maximizing profits and does not care who

gets hurt in the process. The "wait and see" approach under the "open and share" model is a

total disaster. (Declaration of Yarro). We have "waited and seen" that filterless devices has

created a porn pandemic and sex trafficking nightmare.[11]

    A. <u>COMBATING THE PUBLIC HEALTH CRISIS IN A WAY THAT SURVIVES FIRST
AMENDMENT CHALLENGES IN ASHCROFT V. AM CIVIL LIBERTIES UNION,
SEVIER V. APPLE, AND SEVIER V. GOOGLE</u>

14. For purposes of this lawsuit, the Court can take judicial notice of legislative facts.

---

[10]  See the Exhibits - briefs filed by Apple, Google, Verizon, LG, Dell, Planned Parenthood,
Microsoft, Samsung, ect in the 6th Circuit Court of Appeals. Oral Arguments awaits.

[11]  See the Declarations of (1) Glenda Grant founder of Mothers Against Trafficking Humans
(M.A.T.H.); (2) Sarah Zalonis Survivor Of Human Trafficking; (3) The President of United
Families International Laura Bunker; (4) Sarah Zalonis Survivor Of Human Trafficking; (5) The
Managing Director of In Our Backyard Nita Belles).

15. On April 19, 2016, through the leadership of Senator Weiler, Governor Herbert signed into a

law, SCR 9, a resolution officially establishing that filterless products that distribute the internet

has created a "public health crisis" - thereby eliminating any doubt as to whether a consumer has

an individual right to choose to avoid pornography without undue burden placed on it by the

state.[12]

16. Under Utah Code Ann. § 76-10-1231(1)(a)(b), the state requires that ISPs to install a filter

upon the request of a consumer.  Under Utah Code Ann. § 76-10-1231(3)(a)(b), the state

wrongfully authorizes and encourages ISPs to charge a filter installation fee. The State could

force the wholesaler to charge a filter deactivation fee but not a filter installation one because the

installation fee punishes consumers for wanting to protect themselves from the source of the

public health crisis reflected in SCR 9.

17.  The state authorized filter fee discriminates against people on the basis of their religion,

violating the 1st amendment free exercise clause of the United States Constitution - punishing

consumers for wanting to protect themselves and other from obscenity is inherently wrong.[13] The

---

[12] https://www.youtube.com/watch?v=opFjBVigo3Q

[13] The real question is why would the State favor "obscene speech" over "religious speech," when protected speech and the Supreme Court has reassured the Government that filter legislation will survive first amendment heightened scrutiny challenge. *Am. Civil Liberties Union v. Reno*, 31 F. Supp. 2d 473, 476 (E.D. Pa. 1999); also aff'd, 217 F.3d 162 (3d Cir. 2000) vacated sub nom. *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 122 S. Ct. 1700, 152 L. Ed. 2d 771 (2002); *Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968). The Court must strike down this portion of the Utah Code for having for discriminating on the basis of religion and free speech, by denying consumers the right to opt-out of pornography without any undue burden.  It is one thing for the state to find that pornography online has created a public health crisis. It is another thing to come up with a Constitutionally sound solution that the  followers of moral relativism will not throw a tantrum over.  COFA is the solution. While the Governor should be applauded for signing SCR 9 the Supreme Court has long since found that the secondary harmful effects of pornography are indisputable.

state cannot set up consumers for failure because it is bedazzled by widget makers who could

careless about copyright law and obscenity statutes.

## B. THE STATE LACKS A COMPELLING INTERESTS  NOT TO MAKE THE MANUFACTURERS AND WHOLESALERS OF PHYSICAL PRODUCTS THAT DISTRIBUTE THE WEB COMPLY WITH THE EXISTING DISPLAY STATUTE

18. The state and federal obscenity codes are not blue laws. The Governor and Attorney Generals

are not legislatures; their Constitutional duty is to enforce the law as is. Utah Constitution VII §

1, unless, as in this case, if the law offends the Constitution.

19. The Plaintiffs seek an injunction from this Court to make ISPs and Device Makers sell their

products with pre-set filters in step with an existing obligation under the display statute Utah

Code Ann. § 76-10-1228.[14]

---

[14] Utah Code Ann. § 76-10-1228 reads: "(1) Subject to the affirmative defense in Subsection 76-10-1208(3), a person is guilty of a class A misdemeanor who willfully or knowingly: (a) engages in the business of selling, lending, giving away, showing, advertising for sale, or distributing to a minor or has in the person's possession with intent to engage in that business or to otherwise offer for sale or commercial distribution to a minor any material with: (i) a description or depiction of illicit sex or sexual immorality; or (ii) a nude or partially denuded figure; or (b) publicly displays at newsstands or any other establishment frequented by minors, or where the minors are or may be invited as a part of the general public, any motion picture, or any live, taped, or recorded performance, or any still picture or photograph, or any book, pocket book, pamphlet, or magazine the cover or content of which: (i) exploits, is devoted to, or is principally made up of one or more descriptions or depictions of illicit sex or sexual immorality; or (ii) consists of one or more pictures of nude or partially denuded figures. (2) (a) A violation of this section is punishable by: (i) a minimum mandatory fine of not less than $500; and (ii) incarceration, without suspension of sentence in any way, for a term of not less than 30 days. (b) This section supersedes Section 77-18-1."

20. All 50 states have display statutes.[15] And if the lawmakers in Utah are the first to act here, a

reverberating chain reaction will be set off so that all of the lawmakers in the other 50 states will

follow suit in demanding similar compliance. This is a matter of will Utah be a leader in this

area?

---

[15] Ariz. Rev. Stat. Ann. ss 13-3501 to-3507 (Supp. 1986);; Colo. Rev. Stat. ss 18-7-501,-502
(Supp. 1984) (held unconstitutional);; Fla. Stat. Ann. ss 847.0125, .013 (West 1994);; Ga. Code
Ann. ss 16-12-102,-103 (1992) (held unconstitutional);; Ind. Code Ann. s 35-49-3-3 (West
1986);; Me. Rev. Stat. Ann. tit. 17, ss 2911, 2912 (West 1983 & Supp. 1995);; Miss. Code Ann. s
97-5-27 (1994);; Mo. Ann. Stat. ss 573.010, . 060 (Vernon 1995);; Mont. Code Ann. s 45-8-201
(1995);; N.C. Gen. Stat. s 14-190.14 (1986);; N.D. Cent. Code s 12.1-27.1-03.1 (1995);; 18 Pa.
Cons. Stat. Ann. s 5903 (1983 & Supp. 1995);; R.I. Gen. Laws s 11-31-10 (Supp. 1986);; S.C.
Code Ann. ss 16-15-260,-290,-390 (Law. Co-op. 1985);; S.D. Codified Laws Ann. ss
22-24-27,-29.1 (1979 & Supp. 1995);; Tenn. Code Ann. s 39-17-914 (1991);; Utah Code Ann. ss
76-10-1227,-1228 (1995);; Vt. Stat. Ann. tit. 13, s 2804b (Supp. 1995). Marion D. Hefner,
*"Roast Pigs" and Miller-Light: Variable Obscenity in the Nineties*, 1996 U. Ill. L. Rev. 843, 882
(1996). Ga Code Ann S 16-12-102(1) (Michie 1992). See also Ala Stat SS 13A-12-200.1(3),
13A-12-200.5 (1994) (probably prohibiting only display for sale);; Ariz Rev Stat Ann S 13-3507
(West 1989) (prohibiting any display in any "place where minors are invited as part of the
general public");; Fla Stat Ann S 847.0125 (West 1994) (prohibiting only display for sale);; Ind
Code Ann S 35-49-3-3(2) (West 1995) (prohibiting any display "in an area to which minors have
visual, auditory, or physical access");; Kan Stat Ann S 21-4301c(a)(1) (1988) (prohibiting
display in commercial establishments only);; La Rev Stat Ann S 14:91.11 (West 1995)
(prohibiting any display "at a newsstand or any other commercial establishment which is open to
persons under the age of seventeen years");; Minn Stat Ann S 617.293, subd 2(a) (West 1987 &
Supp 1996) (prohibiting commercial display);; NM Stat Ann S 30-37-2.1 (1978 & Supp 1995)
(prohibiting display only while offering for sale, "in a retail establishment open to the general
public," and "in such a way that it is on open display to, or within the convenient reach of,
minors who may frequent the retail establishment");; NC Gen Stat S 14-190.14(a) (1993)
(prohibiting display in commercial establishments only);; Okla Stat Ann SS 1040.75, 1040.76
(West 1983 & Supp 1996) (prohibiting all display, "including but not limited to . . . commercial
establishment(s)");; Tenn Code Ann S 39-17-914(a) (1991) (prohibiting display for sale or rent);;
Tex Penal Code Ann S 43.24 (Vernon 1991) (prohibiting all display, whenever person is
"reckless about whether a minor is present who will be offended or alarmed by the display");; 13
Vt Stat Ann SS 2801(8), 2804a (Equity 1971 & Supp 1995) (prohibiting display "for advertising
purposes"). Eugene Volokh, *Freedom of Speech in Cyberspace from the Listener's Perspective:
Private Speech Restrictions, Libel, State Action, Harassment, and Sex*, 1996 U. Chi. Legal F.
377, 436 (1996)

21. The effect of Utah Code Ann. § 76-10-1228 in layman's terms is: if a 711 sells "girlie magazines," the store must place the magazines behind a "blinder rack" that can only be removed by the store agent after the consumer verifies their age.[16]

22. The physical devices sold by the Tech Enterprise amount to handheld retail stores that are an extension of the bricks and mortar manufacturer and wholesaler. (See Declaration of Yarro).

23. The products never completely leave the and control of the manufacturer and retailer. (See Declaration of Yarro). Therefore, the Tech Enterprise is under an existing obligation under Utah Code Ann. § 76-10-1228 to sell their products with activated digital "blinder racks"/"barricade filter shields," that hold the bank of pornography that otherwise lays in wait for consumers at bay.[17]

24. By authorizing the ISPs to charge the Plaintiffs a filter fee under Utah Code Ann. § 76-10-1231(3)(a)(b), the Plaintiffs and other Christians are effectively being taxed for doing the Governor and Attorney General's job for them by making the ISP comply with Utah Code Ann. § 76-10-1228 display statute.

25. Although the Governor and Attorney General own no special duty to the ISPs and pornography content creators, they are under a Constitutional oath to protect the safety, health, and welfare of their constituents and to not infringe on religious liberties.

26. The double standard imposed on bricks and mortar sexual oriented businesses (SOBs) and not the Tech industry is appalling. Minors are not allowed to see R-rated movies, but they can

---

[16] "Blinder rack" is defined under Utah Code Ann. § 76-10-1201(1).

[17] The constitutionality of display statutes have been challenged over 179 times. In every single case, the display statutes have survived first amendment heightened scrutiny challenge. The most notable case is *Ginsberg v. New York*, 390 U.S. 629, 639–40, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).

walk around with x-rated theaters in their pockets in the form of a filterless iphones. (Harmful

Materials to Minors Act; Utah Code Ann. § 76-10-1216). It makes no sense. Scrutinizing bricks

and mortar SOBs only to then turn a blind eye to the Tech Enterprise distribution of the

pornography that is devastating our society must stop, if we are to beat back transferrable

darkness.

## C. SHOW ME THE MONEY = THE RIGHT KIND OF FILTER FEE IS SIN TAX AS MATTER OF FAIRNESS TO STRIP CLUBS AND TOBACCO MANUFACTURERS

27. As citizens of the United States and Utah, the Plaintiffs would like to see the state of Utah

and all other states prosper and thrive. As we have seen in the music business that has been run

into the ground, the status quo never fixes itself. The bricks and mortar sexual oriented

businesses (SOBs) have been decimated financially. Playboy is putting clothes back on its girls

because adult industry faces the same problem that the music industry has:  competing with free

is impossible.  At least the traditional SOBs were heavily regulated and provided taxable income

for the states.

28. While Utah Code Ann. § 76-10-1231(3)(a)(b) encourages and authorizes ISPs and Device

Makers to charge a filter installation fee unjustifiably, the state can and must impose a filter

deactivation fee instead as a matter of general equitable fairness to cigarette retailers and strip

clubs.[18] UCA §  59-27-103; U.C.A. § 59-14-302.

---

[18] There is overwhelming evidence that pornography, like gambling, is addictive. (See the
Declarations of LCSW, CSAT Gray; Thacker; MFT Vande Voort , LCSW Ward, M.A. Quirk;
LCSW Adamson; Claudine Gallacher, Pornproofkids.org Mental Health Provider; Dr. Leigh
PsyD; Dr. LaNae Valentine, Professor Of Women's Studies at BYU University.) Pornography
adversely impacts the reward cycle, limbic system, and neurotransmitters like oxytocin,
dopamine, beta fosb, and serotonin.  The nicotine in cigarettes is also addictive and harmful. The
State of Utah has imposed a sin tax on cigarettes under U.C.A. § 59-14-302; Utah Code State v.
Packer Corp, 77 Utah 500 (1932); Bush Co. v. Utah State Tax Commission, 225 P3rd 153

29.  As a matter of in protecting religious liberties and the public's health, the Court should all but order the Governor to call a special legislative session to present COFA, which imposes a 20$ sin tax on filter removal.[19] Or even better, the Governor should sua sponte do so. This sin tax can go to the state and the county's and cities where the filter is removed. Some of the proceeds from this pool of funds can be earmarked to go to funding the (1) amazing Utah based awareness groups, like SA Lifeline Foundation, the Elizabeth Smart Foundation, Fight The New Drug; the (2) invaluable after care organizations in Utah, such as Lifestar Network, and the (3) law enforcement groups, whose job has been complicated and made more dangerous by filterless devices.

30. Filter sin tax funds could serve as a scholarship pool for victims of domestic abuse, abduction, trafficking, and sexual assault by the Lifestar Network and SA Lifeline Foundation.

31.  These incredible family groups based in Utah, have sacrificed everything to help the greater good. They should not have to face the undue burden of fundraising, when they are doing an outstanding job in combating the public health crisis cultivated by pornography identified in SCR 9 for the benefit of state at large. The State should reward these groups by enabling them

---

(2009); UCA § 59-27-103. Stripe clubs also are under the imposition of a sin tax because of the secondary harmful effects that stem from sexual oriented businesss.

[19] Representative Jack Williams is the head of the commerce committee for the state of Alabama. He is presenting COFA legislation in January 2017 to the assembly for passage in his state. He has included a $20 filter removal fee state tax that will be used to offset the secondary harmful effects of pornography. Some of the funds from this pool will go to groups that are fighting human trafficking and pornography in the State of Alabama.  Utah MUST do the same thing, enabling groups like Fight The New Drug, SA Life Line, Life Star Network, pornproofkids.org, to be better financially enabled to launch awareness campaigns and engage in after care services. Let's face it, these organizations are doing the state's job for it and they should be better equipped to perform these vital health services that has immense benefit for the welfare and safety of our communities. The state should enable either good faith efforts to fight the new drug from the pool of sin tax funds. Their days of relying on fund raising efforts should be over.

through proceeds collected by the sin tax on filter removal. While ISPs and Device Makers can

factor in the cost of selling their products with functional filters, they cannot legitimately charge

a fee to have filters installed at the direction of the state without violating religious liberties.

32. Also, the filter sin tax fund should go to buy out third party filtering companies created in

Utah in the wake of the porn pandemic created by Device Makers and ISPs. Covenant Eyes,

NetNanny, and Ever Accountable are a few examples of these third party filter companies based

in Utah.  These third party filter companies even acknowledge that they never should have had to

be in business in the first place. (See Declaration of CEO and Chairman of Content Watch and

Net Nanny Brent Bishop; Tyler Gallacher, CEO Of Ever Accountable Tech Expert; CEO of

Think Atomic Ralph Yarro).  These entities deserve to be compensated for their valiant efforts.

This honorable Court should all but order Device Makers and ISPs in the state of Utah to partner

with these third party filter groups to fix the defective design as part of its consumer protection

obligation. [20]

## D. STEVE JOBS SAYS "MORALITY MATTERS"

---

[20] **DEFECTIVE DESIGN:** Cigarette vending machine owners can be held strictly liable for the harm caused by the content inside of their device. *Richardson v. Phillip Morris Inc.*, 950 F. Supp. 700 (D. Md. 1997); *Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp. 2d 882, 893 (W.D. Tenn. 1999).  Likewise, the same goes for the manufacturers of products that distribute the content on the web. The products sold by the Tech Enterprise amount to bookends to a mechanical playboy magazine. Some of the content inside of the product, like sports articles, is valid, and other content, like torture pornography is unprotected speech.  The filterless products sold by the Tech Enterprise are unique in that they never leave the instrumentality and control of the manufacturer, causing them to be held to higher standards under strict liability. (DE Yarro) The manufacturers of devices that distribute the internet are unique in that they are in a position where they can routinely send out software updates. (See declaration of Yarro). Many Device Makers and ISPs have a closed system. (See declaration of Yarro). There are advantages of having a closed system, but this makes it difficult for third party filter companies to engage in "guesswork" in trying to invent methods to create solutions to make the Device Maker and ISP products safer.

33. Pretending for arguments sake that (1) the Supreme Court has not repeatedly found that obscenity is not protected speech ( it has), that (2) the obscenity statutes do not exist and apply to the Tech Enterprise (they do), that (3) SCR 9 "public health crisis" bill did not come into existence in the state of Utah (it did), and that (4) multiple mental health experts have not appeared in this action to attest that pornography consumption is bad for mental health (they have), Steve Jobs pronounced to the media on behalf of the entire Tech Enterprise that the industry has a "moral responsibility" to keep pornography off of their products.[21] That alone should be compelling to the Court and Executive.

34. Because the Tech Enterprise itself has recognized a "moral responsibility" and duty to keep pornography off of its products, neither the Tech Companies nor the state of Utah can suggest that "morality" as a basis for law does not matter when it comes to the topic of sex and pornography.[22] It does. There are natural laws woven into the fabric of the universe that the

---

[21] "We do believe we have a moral responsibility to keep porn off [cell phones and computers]." http://www.zdnet.com/article/jobs-apple-has-moral-responsibility-to-block-iphone-porn-jabs-android-again/

http://techcrunch.com/2010/02/23/apple-iphone-pornography-ban/

[22] Because Steve Jobs spoke of "morality responsibility" regarding pornography on electronic devices on behalf of the Tech Enterprise, neither the Defendants nor the Tech Enterprise can say "morality" does not matter when it comes to crafting law and Court decisions. To argue that "moral doctrine does not matter" is itself a "moral doctrine" that is vying for superiority. While arguing for free speech, the Tech Enterprise imperialistically sermonize about the plausibility of prohibiting Christian rhetoric as a basis for law as a jaded attempt to proselytize everyone into forced acceptance of its self-serving porn gospel in a manner that can only be categorized as malicious liberal fascism predicated on malicious power plays. Now that it is 2016, the Court and the public must face the fact that "without faith, there is no basis for morality, and without morality there is no basis for law." (See the Declaration of Battle Plan Ministries). Because the Tech Enterprise argues under moral relativism, it means that all of their positions are relative, which means that no one has to even listen to them. Perhaps, the Tech Enterprise, like the Tobacco Enterprise, is better off not talking. If a junior Army Officer, like Lieutenant Sevier, can disregard an immoral order predicated on Christian morality coming from a superior to include

Government must honor by the passing of policies that reflect these fixed precepts as a matter of

equitable notice.

---

the President under (UCMJ) 809.ART.90 (20), then the Court, the Governor, and the legislature
have a compelling interest to use that same "objective morality" as a basis to craft law and policy
in the area of sex and marriage. *Armbruster v. Cavanaugh,*140 Fed. Appx. 564 (3rd Cir. 2011).
The United States recognized universal law based on Christian morality that is woven into the
fabric of the universe at the Nuremberg trials; clearly the United States must still recognize that
same superior set of morality as a basis for law when it comes to restricting the tech companies.
*Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 154 (2d Cir. 2010). Everyone says that
"they are on the side of justice," but we cannot even agree on "what justice is." A foundational
question in this case is whether the USSC was right in *Holy Trinity v. United States*, 143 U.S.
457 (1892), when it found that "American is a Christian Nation;" or alternatively, are we now a
"Savage Nation" that is part of a caliphate of moral relativism. Justice Kennedy, a moral
relativist, enshrined the modern cultural mindset in *Planned Parenthood v. Casey,*505 U.S. 833
(1992) when he said, "At the heart of liberty is the right to define one's own concept of existence,
of meaning, of the universe." Translated in German, Justice Kennedy's worldview reads "Jedem
das Seine," which means "to each his own," which was what the sign hanging at the entrance of
Buchenwald concentration camp read. "Jedem das Seine" is the cornerstone religious value
behind the Tech Enterprise's refusal to sell their products with filters on their own. Both Justice
Kennedy and Justice Scalia cannot be right at the same time. Either Christian Judges must be
purged from the bench or relativist Judges because these worldviews are irreconcilable.
Furthermore, this question is raised here: "when is the Court and the American public going to
come to terms with the fact that the establishment clause of the first amendment is not only
selfdefeating and irrational, it is impossible to enforce?" All public officials bring with them a set
of semireligious unproven faith based assumptions with them into the public square, but not all
truth claims are equal. We are not just at law here; we are at religion. All religion amounts to is a
set of question to the greater questions. Not all religious doctrine are equal. "Truth" is more
important than we think and "freedom" is more complex than we assume. Without "truth" there
is no "freedom." "Truth" is always relevant to Court proceedings to eradicate the very
"darkness" that Reverend King talked so much about during the civil rights movement of 1964.
"Freedom" is not the presence of restrictions or the absence of restrictions, "freedom" is the
presence of the right restrictions. The Court and legislatures must impose the set of restrictions
that fit the truth of our design or the givenness of our nature. The set of restrictions that produce
the most amount of peace, healing, forgiveness, grace, reconciliation, and intimacy should be the
set of restrictions that the Court adopts. In this action, the Plaintiffs have respectfully given the
Court and the State the opportunity to impose the set of restrictions on the Tech Companies that
will allow the world to experience a richer and deeper freedom in step with an acknowledged
"moral responsibility" advanced by the Enterprise itself.

35. Cases do not persist in a theoretical vacuum: "morality always matters," especially in sex related cases. By striking down Utah Code Ann. § 76-10-1231(3)(a)(b) and passing COFA, for the first time in history Device Makers and ISPs can actually market their products as family friendly without committing fraud under 15 U.S.C.§ 1051; Utah Code §13-11a-1, et seq. (Truth in Advertising)

36. The Attorney General is tasked with protecting consumers from fraud under entire sections of the Utah Code. U.C.A. § 13-11-1. The Attorney General should not oppose this lawsuit pursuant to his existing duties in the area of consumer protection.

37. The Attorney General's office has an entire consumer protection department; therefore, the Attorney General cannot oppose this action with a straight face. By putting the Plaintiffs in a position where they have to pay a filter fee, the Plaintiffs are incurring the cost of the Tech Enterprise's fraud. The Plaintiffs are not asking the government to legislate morality nor are the Plaintiffs asking for a prohibition on pornography,[23] but the Tech Enterprise should not be

---

[23] COCA COLA, COCAINE, AND PORNOGRAPHY: Studies done by neurologist Valerie Voon and Dr. Donald Hilton demonstrate that the pornography that is distributed by the ISPs and Device Makers impact the same area of the brain as pornography. (http://yourbrainonporn.com/cambridge-university-brain-scans-find-porn-addiction). There are some substances that raise dopamine levels too high. Cocaine and porn are two of those substances. Congress and President passed the Harris Act, which made Coca Cola pull the porn ingredient out of Coca Cola. Here in the instant case, thanks to the wording of Utah Code Ann. § 76-10-1231(3)(a)(b), the Plaintiffs have to pay a fee to make the ISPs pull the porn ingredient out. That is scenario is inherently wrong under res ipsa loquitur. If the state adopted COFA and forced ISPs and Device Makers to sell their products with filters, then a purchaser who is of age could still have access to this damaging content after they verified their age with the retailer. The Plaintiffs are by no means "porn prohibitionist" in this action; this is a case that asks the Court to require the State of Utah make the objectively "right choice" the "easy choice." (Declaration of Yarro). Unlike Bernie Sanders who is recklessly trying to legislate charity, the Plaintiffs are not here to legislate morality. The problem with the world is the human heart. The second problem is our collective refusal to come to terms with that fact. Although lawmakers cannot legislate away the realities and problems of the heart, they can stifle influences that poison our mind, will, and emotions. Just because graphic porn sights and prostitution hubs

permitted to perpetrate fraud and injure the public health like the Tobacco Enterprise did before
it too was regulated. The Plaintiffs ask that the burden shift to make it more difficult to interface
with obscenity - a lot of which is illegal - not easier.

## G. GIVING CONSUMERS CONTROL OF THE  ELEMENT OF INTENT AS A PART OF FUNDAMENTAL  DUE PROCESS RIGHTS

38. The idea of the state or ISPs setting up consumers for criminal liability is outrageous. The

State of Utah must be in the practice of "crime prevention," not the "crime cultivation."

"Prevention," not "prosecution," must be the first line of defense to criminal conduct that flows

from exposure to pornography on filterless devices that the Supreme Court and state have

recognized.

39. The fact that a consumer can be put in jail for exposure to child pornography[24] on a filterless

Devices and ISP routers that are distributing false and misleading domain names in violation of

U.S.C.A. § 2252B is patently outrageous.[25]

---

could be put behind a filter does not mean that they are gone forever. It just means that they are
more inconvenient to access, causing consumers to think twice before accessing content that
violates the self-evident truth about our nature in the area of sex.

[24] Child pornography is defined under Utah Code Ann. § 76-5b-103.

[25] 18 U.S.C.A. § 2252B: Misleading domain names on the Internet states: (a) Whoever
knowingly uses a misleading domain name on the Internet with the intent to deceive a person
into viewing material constituting obscenity shall be fined under this title or imprisoned not more
than 2 years, or both.(b) Whoever knowingly uses a misleading domain name on the Internet
with the intent to deceive a minor into viewing material that is harmful to minors on the Internet
shall be fined under this title or imprisoned not more than 10 years, or both.(c) For the purposes
of this section, a domain name that includes a word or words to indicate the sexual content of the
site, such as "sex" or "porn", is not misleading.(d) For the purposes of this section, the term
"material that is harmful to minors" means any communication, consisting of nudity, sex, or
excretion, that, taken as a whole and with reference to its context--(1) predominantly appeals to a
prurient interest of minors;(2) is patently offensive to prevailing standards in the adult
community as a whole with respect to what is suitable material for minors; and(3) lacks serious
literary, artistic, political, or scientific value for minors.(e) For the purposes of subsection (d), the

40.  The Device Makers and ISPs play a part in the cultivation of criminal intentions and are

themselves liable. The state is also liable for being non-responsive to foreseeable problem, when

a viable solution exists found in COFA which is the least restrictive means to regulating harmful

speech in a Constitutionally sound manner that does not offend religious liberties.

41.  At the heart of all criminal matters is the element of "intent." Consumers should be required

to "intentionally" choose to remove the filter instead of permitting the ISP and Device Maker to

patronizingly make that choice for them, while falsely packing that up as"freedom" in order to

dupe the public.

42. The real free speech interest rests in the giving consumers the personal choice to remove a

custom made filter that is already in place by the manufacturer.  Of course, under the existing

State and Federal Code, ISP and Device Makers never should have given minors the choice in

the first place.  Every time and ISP or Device Maker sells a filterless product to a minor they are

absolutely engaging in criminal conduct. Utah Code §§ 76-10-1206,1231,1233.[26] It is difficult to

understand how the state, the media, or Tech companies could even challenge the Plaintiff's

pro-child and pro-family positions? The only explanation would be to classify them as being in

the same kind of darkness that envelops members of ISIS.

43. The fact that the state encourages the ISPs and Device Makers to charge a fee to install a

filter violates the due process rights of consumers because it interferes with the element of intent

---

term "sex" means acts of masturbation, sexual intercourse, or physical contact with a person's
genitals, or the condition of human male or female genitals when in a state of sexual stimulation
or arousal.

[26] Every time the Tech Enterprise mail a filterless cell phone, the are committing a federal crime
under 18 U.S.C. § 1341.

in prospective legal proceedings.  The state has a fundamental duty to protect its citizens from

exposure to criminal liability.

## H.  PORNOGRAPHY FEEDS THE DEMAND SIDE OF HUMAN TRAFFICKING

44. Although the Attorney General is the Plaintiffs' defendant and adversary here, the Plaintiffs

admit that the Attorney General Reyes is a rock star when it comes to fighting human trafficking.

[27]  Yet, the Attorney General and Governor must come to terms with the fact that Tech Enterprise

is racketeering in obscenity and trafficking by not selling their products with filters upfront. [28]

---

[27] The evidence shows that Attorney General knows first hand that many trafficking circles are
connected to Cartels, having personally gone undercover, like Plaintiff Sevier, in fighting them.
(see Exhibits)
http://www.deseretnews.com/article/865619642/Utah-AG-Sean-Reyes-made-secret-trip-to-rescue-child-sex-slaves-i
n-Colombia.html?pg=all

http://www.sltrib.com/news/2063410-155/reyes-utah-group-played-part-in

http://attorneygeneral.utah.gov/human-trafficking

[28]  THE TECH ENTERPRISE IS RACKETEERING IN OBSCENITY AND TRAFFICKING.
Device Makers, ISPs, and their lobbying have formed a Tech Enterprise that is racketeering in
mail fraud, wire fraud, obscenity, and sex trafficking 18 U.S. Code §§1961-1968. The Tech
Enterprise is not very original. It is stealing plays from the play book of the Auto-Industry and
Tobacco Industry. The Tech Enterprise argue that consuming pornography is no more harmful to
consumers than eating twinkies, which is the same argument that the Tobacco Industry made
before Congressional Committees on the hill. Just like the Tobacco Industry denied that nicotine
is addictive and unhealthy, the Tech Enterprise denies that pornography is addictive and
damaging. (See the Declarations of LCSW, CSAT Gray; Thacker; MFT Vande Voort , LCSW
Ward, M.A. Quirk; LCSW Adamson; Claudine Gallacher, Pornproofkids.org Mental Health
Provider; Dr. Leigh PsyD; Dr. LaNae Valentine, Professor Of Women's Studies at BYU
University.) In support of the public interest prong for a motion for an injunction, mental health
experts have appeared in this case to attest that pornography on filterless devices hijacks
neurotransmitters like dopamine, oxytocin, serotonin, and beta fosb, while adversely altering the
limbic system and reward cycles. (LCSW, CSAT Gray; Thacker; MFT Vande Voort , LCSW
Ward, M.A. Quirk; LCSW Adamson; Claudine Gallacher, Pornproofkids.org Mental Health
Provider; Dr. Leigh PsyD; Dr. LaNae Valentine, Professor Of Women's Studies at BYU
University.) The evidence shows that exposure to pornography on filterless devices cultivates in
detachment disorders that make it difficult for an individual to maintain a committed
relationship. (See the Declarations of Rhyll Croshaw SA Lifeline Foundation and Clay Olsen
Fight The New Drug.)  "Porn kills love" so having to pay to have a filter installed on a

The state is enabling a litany of crimes against humanity replacing Utah Code §§ 76-10-1231 et. seq with COFA will end that.

45. It is understandable that the Plaintiffs would balk at being charged a fee to have filters installed, when the pornography that ISPs and Device Makers distribute is tied directly into human trafficking.[29]

46. The Plaintiffs should not be punished by being forced to pay a filter fee in order to avoid supporting human trafficking any more than Hobby Lobby should be required to pay for abortion pills or the little sisters of the poor should be forced to pay for abortion insurance or face fines from the IRS. *Little Sister Of The Poor v. Burwell*, 794 F3rd 1151 (10th Cir. 2015); *Little Sister Of The Poor v. Burwell,* 134 SCT 1022 (2014). This might come as a total shock, but supporting human trafficking, violence towards women, and child abduction is against the Plaintiffs religion.

47. The state knows or should know pornography on filterless products is an advertisement for prostitution. (See the declarations of Declaration of (1) Glenda Grant founder of Mothers Against Trafficking Humans (M.A.T.H.); (2) Sarah Zalonis Survivor Of Human Trafficking;  (3) The President of United Families International Laura Bunker;  (4) Sarah Zalonis Survivor Of Human Trafficking; (5) The Managing Director of In Our Backyard Nita Belles).   Exposure to

---

dangerous and defective product is simply lunacy.  The COFA legislation that the Plaintiffs propose is by far the strongest way to combat human trafficking. Senator Cork's "End It" movement - while well intended - is simply unrealistic. We will never be rid of human trafficking, but we can stifle the influences that fuel the demand side through common sense legislation.

[29] See the declarations of Declaration of (1) Glenda Grant founder of Mothers Against Trafficking Humans (M.A.T.H.); (2) Sarah Zalonis Survivor Of Human Trafficking;  (3) The President of United Families International Laura Bunker;  (4) Sarah Zalonis Survivor Of Human Trafficking; (5) The Managing Director of In Our Backyard Nita Belles.

pornography on filterless devices cultivates sexual voyeurism. *Id.* There is a reason why the

prostitutes on Backpage.com offer to provide porn like experiences to consumers in real life. *Id.*

Just as pornography is unavoidable and on click away, so are the prostitution hubs that continue

to grow and expand in a pornified perpetrating culture that has normalized false permission

giving beliefs. *Id.*

48.  The pornography on filterless devices do the grooming for human traffickers by eroding

consent and proliferating false permission giving beliefs. *Id.*

49.  "Consent" is spread out across a continuum, a statute that encourages the ISPs and Device

Makers to charge a fee is interfering with consent in a manner that is Constitutionally unsound.

50. Every time a purchaser consumes porngraphy, they are contributing to a large interconnected

web involving cartels, strip clubs, trafficking, child exploitation, and violence towards women.

51. Authorizing the ISPs to charge a filter installation fee, is tantamount to punishing the

Plaintiffs for their opposition to human trafficking, violence towards women, and child

exploitation. It is unjust on its face.

## I.    FILTERLESS DEVICES SEXUALLY EXPLOIT CONSUMERS = LACK OF CONSENT IN VIOLATION OF THE DUE PROCESS CLAUSE

52. Filterless Devices sold by the Internet Service Providers and Device Makers amount to the

greatest concentration of pornographic material since in the inception of humanity. It can be

rightfully said that filterless ISP and Device Maker products are themselves sexually exploiting

their own customers, while hijacking biochemistry.[30]

---

[30] Declarations LCSW, CSAT Gray; Thacker; MFT Vande Voort , LCSW Ward, M.A. Quirk; LCSW Adamson; Claudine Gallacher, Pornproofkids.org Mental Health Provider; Dr. Leigh PsyD; Dr. LaNae Valentine, Professor Of Women's Studies at BYU University.

53. Adult consumers should have the right to consent to filter removal. But they should not be taxed for demanding that the wholesaler install a filter, as they are already required to do under state and federal obscenity law.

54. The disparate treatment of Christians who do not want to be exposed to pornography denies them the basic liberties and equal protection under the law guaranteed by the First and Fourteenth Amendments of the United States Constitution. For these reasons, the Plaintiffs ask this Court to enjoin, preliminarily and permanently, all enforcement of Utah's Code that encourages, instructs, and permits ISPs to charge a fee to impose filters.

## SECTION II: JURISDICTION AND VENUE

55. Plaintiffs incorporate by reference all preceding paragraphs.

56. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331 (Federal Question) because this action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, a federal law; under 28 U.S.C. § 1343(a)(3) because this action is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution; and under 28 U.S.C. § 1343(a)(4) because this action seeks equitable relief under 42 U.S.C. § 1983, an Act of Congress. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1361. This action arises under the Constitution and law of the United States. This Court has jurisdiction to render declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 2000bb-1.

57. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant Herbert resides in this district and all the Defendants reside in the State of Utah. Venue is also proper in this Court because a.substantial part of the events giving rise to the claim occurred in this district.

An ISP in Salt Lake, Xmission, threatened to charge the Plaintiffs a fee to install a filter to block out the harmful pornography being distributed through their product in following the state's authorization under Utah Code Ann. § 76-10-1231(3)(a)(b).

58. Through this action, pursuant to 42 U.S.C. § 1983, the Plaintiffs seek a declaration that Utah Code Ann. § 76-10-1231(3)(a)(b) is unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution, and is unconstitutional under the Free Exercise and Free Speech of the First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment to the United States Constitution. The Plaintiffs further seek a preliminary and permanent injunction preventing the Defendants from enforcing the aforementioned provisions in this paragraph against the ISPs.

59. To the extent that Article III of the Utah State Constitution, Utah Code Ann. § 76-10-1231(3)(a)(b) is used as the basis to impose an undue burden on religious speech to promote obscene speech, the Plaintiffs seek a declaration that this law is unconstitutional under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and the Free Exercise and Free Speech of the First Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment to the United States Constitution.

60. The Plaintiffs believe, like the founders, that the Bible is the superior set of doctrine to base policy off of because it involves that which is true period. Sex is all about context. (See Declaration of Battle Plan Ministries). The best forms of sex are between one man and one woman in the confines of marriage. Id. Whatever or with whoever a person has sex with, they

bond with. Such matters involve the straightforward science of dopamine, which unsurprisingly backs Christianity. This does not mean that Plaintiff Sevier in other controversies that the uniform application of the Constitution should not apply for individuals who have already been injured.

61. The Plaintiffs remain in a persistent state of irreparable harm by being forced to either (1) pay a fee to have filters installed, to (2) go without the internet, or (3) to be forced to access the internet on filterless devices, where exposure to pornography is unavoidable.

62.    To enforce the rights afforded by the United States Constitution, the Plaintiffs brings this action pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief against enforcement of Utah's laws in dispute. The Plaintiffs also seek to recover all of their attorneys' fees, costs, and expenses incurred in this action pursuant to 42 U.S.C. § 1988, and any other relief that this Court may order.

## SECTION IV THE PARTIES

63.  Plaintiffs incorporate by reference all preceding paragraphs.

64. Chris Sevier is over 18. He is a resident of Utah in Salt Lake City, where the injury occurred. Plaintiff Sevier is an international DJ, not a legislature of morality. [31]

65. John Gunter is over 18. He is a resident of Utah in Salt Lake City, where the injury occurred.

---

[31]  https://www.youtube.com/watch?v=I6IXlqMtk5c

https://www.youtube.com/watch?v=l44TYXT4jkc

http://djmag.nl/features/12082015-1458/waarom-we-vocalisten-niet-kunnen-missen

https://www.facebook.com/photo.php?fbid=10153250205142584&set=a.10150735716757584.393680.506652583&type=3&theater

66.  The Plaintiffs formed a partnership that is a private one that is on its way to becoming an integrated auxiliary of a church under 26 U.S.C. 6033(a)(3)(A)(i).

67. Defendant Gary Herbert is the Governor of Utah. In his official capacity, the Governor is the chief executive officer of the State of Utah. It is his responsibility to ensure that the laws of the State are properly enforced. The Governor resides in Salt Lake City, Utah. He also maintains an office in the State Capitol in Salt Lake City, Utah.

68. Defendant Sean Reyes is the Attorney General of Utah. In his official capacity, the Attorney General is the chief legal officer of the State of Utah. It is his duty to see that the laws of the State are uniformly and adequately enforced. The Attorney General maintains an office in the State Capitol in Salt Lake City, Utah.

## SECTION V CONSTITUTIONAL PROVISIONS

69.  Plaintiffs incorporate by reference all preceding paragraphs. The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. l.

70. The Fourteenth Amendment to the United States Constitution provides in part: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

## VI FACTS

## A. **THE PROCEDURAL HISTORY OF THE LAW AND FACTS THAT HAVE LEAD UP TO THIS TIPPING POINT MOMENT**

71.  Plaintiffs incorporate by reference all preceding paragraphs.

From the inception of the United States, the Courts and governments have been opposed to obscenity.[32]

72. In 1895, the Supreme Court found that the United States is a "Christian Nation," which just means that our standards of reasonableness, reality, law, and right and wrong comes from the Biblical worldview.

73.  In the 1940s, sadist and homosexual Dr. Alfred Kinsey introduced  his junk science of "sexualogy" that the liberal media embraced hardcore, which opened the door to a irrational "groupthink" bandwagon that liberalize many of our domestic laws. Yet, "obscenity" has never been protected speech in this Country.[33]

---

[32] In the first obscenity case in 1815, the Justice Yates stated: "The destruction of morality renders the power of government invalid, for government is no more than public order. It weakens the hands by which society is kept together. The corruption of the public mind, in general, and debauching the manners of youth, in particular, by lewd and obscene pictures...must necessarily be attended with the most injurious consequences. " *Commonwealth v Sharpless,* ( 2 Serg & Rawle 91 (Sup. Ct. Penn. 1815).

[33] Obscenity is not within the area of protected speech or press." *Court v. State*, 51 Wis. 2d 683, 188 N.W.2d 475 (1971) vacated, 413 U.S. 911, 93 S. Ct. 3032, 37 L. Ed. 2d 1023 (1973) and abrogated by *State v. Petrone*, 161 Wis. 2d 530, 468 N.W.2d 676 (1991); *State v. Weidner*, 2000 WI 52, 235 Wis. 2d 306, 611 N.W.2d 684; *Ebert v. Maryland State Bd. of Censors*, 19 Md. App. 300, 313 A.2d 536 (1973). Obscenity is not protected expression and may be suppressed without a showing of the circumstances which lie behind the phrase "clear and present danger" in its application to protected speech. *Roth v. United States*, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498. *United States v. Gendron*, S24:08CR244RWS(FRB), 2009 WL 5909127 (E.D. Mo. Sept. 16, 2009) report and recommendation adopted, S2 4:08CR 244 RWS, 2010 WL 682315 (E.D. Mo. Feb. 23, 2010); *Chapin v. Town of Southampton*, 457 F. Supp. 1170 (E.D.N.Y. 1978); *Sovereign News Co. v. Falke,* 448 F. Supp. 306 (N.D. Ohio 1977).

This is true both before and after Al Gore allegedly invent the internet.[34]

74. In the 60s and 70s, the Supreme Court gave us the "I know it when I see it"[35] and "Miller"

standards.[36] The legislatures subsequently codified these standards in obscenity statutes.

75. In 1968, the USSC found that the state's display obscenity statutes that require retailer to sell

"girlie magazines" and obscene content behind barrier filter/shields were not unconstitutional

under the first amendment height scrutiny. *Ginsberg v. New York,* 390 U.S. 629, 639–40, 88

S.Ct. 1274, 20 L.Ed.2d 195 (1968).[37]

76.  In the early 90s, the Tech companies formed the porn compact and crawled into bed with

predatory porn content creators. [38]  Filterless devices caused an explosion in exposure to obscene

---

[34] The internet is not a cube in the desert that glows, the internet is a part of the sum that are the physical products sold by the Device Makers and ISPs. Without the products that power on and off, there is no internet.

[35] In 1964, in *Jacobellis v. Ohio, 378* U.S. 184 (1964), the Court famously stated:"I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description ["hardcore pornography"], and perhaps I could never succeed in intelligibly doing so. But I know it when I see it."

[36] *Miller v. California*, 413 U.S. 15, 3034 (1973).

[37] To "simply adjusts the definition of obscenity to social realities" has always failed to be persuasive before the Courts of the United States. *Ginsberg.*, 390 U.S. 629 at 1280; *Mishkin v. State of New York*, 383 U.S. 502, 509, 86 S.Ct. 958, 16 L.Ed.2d 56; *Bookcase, Inc. v. Broderick*, supra, 18 N.Y.2d, at 75, 271 N.Y.S.2d, at 951, 218 N.E.2d, at 671. The *Ginsberg* Court explained that "[t]he legislature could properly conclude" that parents who have "primary responsibility for children's well being are entitled to the support of laws designed to aid discharge of that responsibility," *id.* at 639, "[t]he State also has an independent interest in the wellbeing of its youth," *id.* at 640, and the legislature was entitled to regard the material covered by the statute as "impairing the ethical and moral development" of minors, *id.* at 641.

[38] The Enterprise came into existence not later than 1991 at a secret meeting between Steve Jobs and Bill Gates at Job's house in Palo Alto.
http://pandawhale.com/post/34779/steve-jobs-and-bill-gates-discuss-the-pcs-future-at-jobs-palo-alto-home- in-1991.

content, bringing pornography aboveground and into our homes in a manner that is unavoidable.[39] The impact of that decision is that all of us are being affected.

77. To deal with the pornography problem caused by Device Makers and ISPs, the Federal Congress passed the Communications Decency Act (CDA), which was struck down following challenges made by the ACLU in *Reno v. ACLU,* 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). The problem with the CDA was that it attempted to regulate individual users and not the handful of readily identifiable ISPs and Device Makers, who are the real source of the problem. Enforcement of the CDA would have been a total dehumanizing nightmare. As a follow up to the CDA, Congress passed the Child Online Privacy Protection Act (COPPA). COPPA was also challenged by the ACLU and it was struck down.[40] COPPA attempted to regulate pornography content creators found only within the United States. The Government lacks jurisdiction over porn content creators overseas.

---

For the past two decades the world's largest Tech summit has been held at the same time as the world's largest adult expo in Las Vegas. These conventions are housed at the same location and at the same time for a reason. Pornography is driving technology and interfacing with superficial "family friendly" capitalistic conglomerates. (1) live chats; (2) anti-fraud security software; (3) online payment systems; (4) streamed video; (5) micro-payment systems; (6) pop ups and pop unders; and (7) traffic optimization were all developed by the pornographers and capitalized on by the Tech Enterprise. R & D money for pornography developed these things in league with the Tech companies

[39]. Porn sites get more visitors each month than Netflix, Amazon And Twitter Combined. Pornography is a 95 billion dollar industry that earns more than the NFL, NBA, and Major League Baseball put together. The United States is responsible for approximately 13 billion of that number. 3 Billion associates with child pornography.

[40] *Am. Civil Liberties Union v. Reno*, 31 F. Supp. 2d 473, 476 (E.D. Pa. 1999); also aff'd, 217 F.3d 162 (3d Cir. 2000) vacated sub nom. *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 122 S. Ct. 1700, 152 L. Ed. 2d 771 (2002).

78. Yet, the Supreme Court did not strike down COPPA without providing a viable alternative, finding that filters are the least restrictive means to regulate these matters. A Congressional inquiry group commissioned by the USSC found the same thing. The USSC in Ashcroft all but ordered the Attorney General to report back to Congress and tell it to pass filter legislation that would regulate the handful of readily identifiable Device Makers and ISPs. But Congress has not been responsive in passing filer legislation, not until now anyway.

## THE PLAINTIFFS ENTER THE TIMELINE: SEVIER V. APPLE - SEVIER V. GOOGLE

79. This is where Plaintiff Sevier enters the timeline.[41]

---

[41] Plaintiff service has been falsely smeared being called every name under the sun that has nothing to do with reality, but everything to do with political agenda advanced by adversaries. Plaintiff Sevier received degrees from Vanderbilt in politics and law. He voluntarily joined the United States Military and trained to be an infantry line officer in response to the events of September 11, 2009. At the last minute, he was classed for Judge Advocate Training and then assigned to line Units. He is a former CEO of a record company on Music Row. He is a famous international topline vocalist and songwriter.  He has a history of standing up against a host of bullies in the legal arena only to face an avalanche of malicious reprisal campaigns that have been calculated to smear and impeach him to discredit his accusations brought within his scope and line of his duties as a Court Officer or as an Army Officer.  In 2008, the Plaintiff sued Donald Trump's celebrity apprentice victor, John Rich, for copyright violations and systematic bullying of his recording artists, which caused Mr. Rich to waste millions in legal fees, which changing provisions of the Copyright Act. In 2013, Mr. Rich retaliated by falsely accusing Plaintiff Sevier of "stalking" and convincing one of his fans, some unknown girl who is literally an actress, to do the same creating volumes of fake smear fodder for the liberal media. The Nashville District Attorney's office played along because Plaintiff Sevier had previously sued three ADAs and reported them to the BPR for dishonest dealings.  After a year of harassing Plaintiff Sevier, the state of Tennessee dropped the fake case brought by the fan, the Rich case was resolved without any omission of guilt offered by the Plaintiff Sevier because the ADA knew that the state of Tennessee would be facing civil lawsuits for malicious prosecution in Federal Court. In March 2010, Plaintiff Sevier attempted to report Congressman John Mark Windle to the Inspector General for violating Army Regulations and DOD laws only be subjected to a reprisal campaign through the combat stress clinic, which was misused to stop him from reporting. Despite the fact that Plaintiff Sevier filed timely reports to the DOD, nothing was done because Congressman Windle is a Democrat and the President is convinced that the purpose of the DOD and DOJ is to protect political interests. In 2011, Plaintiff Sevier sued the BPR for targeting Christian attorneys under the same rationale demonstrated by Louis Learner

In 2012, Plaintiff Sevier lost his family at the hands of unintended exposure to pornography on filterless devices as a direct result of the Tech Enterprise's racketeering efforts in wire fraud, mail fraud, obscenity, and human trafficking.[42] In 2013, after going on five overseas Christian mission trips, Plaintiff Sevier elected to get involved with the fight against human trafficking as a part of personal recovery, putting to use his military training and lawyer skills. In 2013, he joined a team of former Spec Ops Internationals, FBI agents, Seals, Marine Recon, and Army Regular Soldiers with combat experience to do overseas extractions. In reviewing the totality of the evidence, it became clear that the operatives were merely addressing a symptom of a great problem which is the demand.[43]

---

through the IRS regarding conservative groups. This lead the BPR members to false induce the VA to hand over confidential medical records that connected to the Congressman Windle fiasco in total disregard of HIPPA. The BPR is an agent of the Tennessee Supreme Court. The BPR fabricated one of its colossal fictions and argued that because Plaintiff Sevier supposedly had PTSD from combat it was impossible for him to practice law. The TNSC used Plaintiff Sevier's military service to force deactivate the Plaintiff Sevier's law license while his lawsuit against the BPR was pending as part of a retaliatory malicious power play crafted to discredit his claims against the BPR members. The one thing that the reprisal campaigns have in common is that they have nothing to do with reality and everyday life. They are calculated to cause others in the public to turn against and to not listen to his well reasoned positions that are predicated on the rule of law and the evidence. In short, the false labels of "mentally ill," "stalker," and "incapable of practicing law" are such egregiously false positions that the accusers of these fictitous narratives deserve to be prosecuted.

[42]  Because Device Makers and ISPs have been afforded total impunity to invite and given free range to predatory pornogrpahers to stalk their consumers, the following techniques are employed to cultivate forced encounters with highly obscene pornographic material in hopes of cultivating addiction: (1) free teaser images; (2)  innocent word searches; (3) misspelled words; (4) stealth sites;  (5) pop–ups and ad banners; (6) e–mail spam;  (7) mousetrapping; (8) looping, (9) free samples. By passing COFA, these wrongful ambush tactics would be thwarted.

[43] After a girl is rescued, traffickers, often times go and recapture her, or perhaps worse, the enslave a fresh girl. The demand problem must first be attacked. SCR 9 identifies the real enemy, and COFA addresses it as a viable solution that accords with common sense.

80. In June 2013, Plaintiff Sevier sued Apple Inc. for products liability violations and fraud.

*Sevier v. Apple*,  2014  WL 581770 (M.D TN 2014).  Despite the millions of dollars that the The

Tech Enterprise has spent on lobbyist, they never saw a lawsuit like the one Plaintiff Sevier filed

coming. Apple then used the media to smear Plaintiff Sevier across the globe,[44] which had the

unintended consequences of compelling responsiveness of the British Prime Minister, since after

all Plaintiff Sevier's intentionally laid out in his complaint how the government can regulate

pornography on filterless devices in a way that accords with universal transcultural law and

fundamental Constitutional principles. The International Business Times Wrote:

"Last week, a man in the U.S. sued Apple for not including a default "safe mode" that prevented
him from accessing porn. Chris Sevier said his MacBook led him to a serious porn addiction that
resulted in depression and his family leaving him. While many initially mocked the case, the UK
is now asking tech companies to do exactly what Sevier asked for, showing how serious
lawmakers around the world are taking the issue of online pornography."
http://www.ibtimes.com/war-porn-uk-does-david-camerons-plan-battle-child-pornography-go-too-far-video-1355279

81. In response to the lawsuit, Apple unwisely showed up ready to fight Plaintiff Sevier tooth

and nail because (1) the Tech Industry does not want to be regulated at all costs and because (2)

the Tech Enterprise wants consumers addicted to pornography and co-dependent on their

products. In the spring of 2014, while defending themselves, Apple admitted that the primary

reason they do not sell their products with filters was "because none of the other Tech companies

do either." This naturally compelled Plaintiff Sevier to turn around and sue a majority of the

other members of the Tech Enterprise under racketeering in June 2014. (See

*Sevier v. Google Inc.*, 2015 WL 736989 (M.D. TN 2015);, Verizon, Samsung, LG, Dell,

Microsoft, Planned Parenthood, xBox, Android, Motorola; 3:14-cv-1313.

---

[44] https://www.youtube.com/watch?v=1heZ_CiA8bA

82. This is where Plaintiff Gunter enters the timeline. Plaintiff Gunter is himself a victim of unwanted exposure to pornography on a filterless device. He has spent more than a decade through Clean Services and Citizens United in fighting to push pornography back underground. In November 2014, Plaintiff Sevier contacted Plaintiff Gunter and asked him to help organize a coalition to back the litigation. Plaintiff Gunter from that day forward through Clean Services Foundation has rallied support for Plaintiff Sevier's legal initiatives. The two have been in the trenches ever since in what amounts to a full scale war.

83. In May 2015,  Plaintiff Sevier met with Federal legislatures in DC to include Senator Rubio, Hatch, Lee, Corker, Mackey, ect senior political advisors about passing COFA. The lawmakers and the Plaintiffs agreed COFA legislation should first be presented by the states, since COFA is merely the digital version of the existing display statute passed by the states. Once a couple of states present COFA, the Federal Commerce committee will as well.

84. In the fall of 2015, both Sevier v. Apple and Sevier v. Google were sent to the 6th Circuit Court of Appeals for the Court to decide if it had subject matter jurisdiction following what amounts to an unethical procedural scam initiated by Dell's counsel and Magistrate Judge Knowles, both of whom are total corporate sellouts who engage in the ends justify the means power plays in a manner that is grossly unethical and demonstrates that they do not take their oath to the Constitution even remotely seriously.

85.  Both cases have been fully briefed before the 6th Circuit and oral argument awaits.  The evidence suggests that the 6th Circuit will remand and issue an order that speechs of the probability that the Plaintiffs will be likely be successful on the merits.

86. On April 2016, Representative Jack Williams of the State of Alabama agreed to be the first representative to roll out COFA in 2017.

87. On April 19, 2016, Utah passed SCR 9 finding that pornography is a public health crisis and HB 155.[45]

THE INJURY

88. In April 2016, the Plaintiffs, two Christians, formed a partnership in Salt Lake City. The Plaintiffs rented two properties, Alpha and Bravo properties. The Plaintiffs intend to lease fully furnished business offices within the property to other Christian tenants, who are missionaries, Pastors, and nuns like the Little Sisters of the Poor. The offices will also serve as prayer rooms for their tenants and themselves - where prayers for the hearts of the lawmakers will be at bar.

89. One of the selling points of the Plaintiff's partnership is that the Alpha and Bravo properties come fully furnished with clean internet. In terms of property (alpha), as an authorized agent of the partnership, Mr. Gunter acquired ISP services from CenturyLink.  After entering into a contact  Mr. Gunter discovered that the ISP router box did not come with a filter already installed and activated. The ISP made it clear that if Utah Code 76-10-1231(1)(a)(b) did not force the ISP to provide a filter upon the demand of the consumer, they would not do so. The ISP indicated that it would charge the Plaintiffs a fee to have the filter installed as it was entitled to do so under Utah Code 76-10-1231(3)(a)(b). The ISPs threat was made under the color of state law, forcing the Plaintiffs to pay out a filter fee for one of the properties unjustifiably. Because the

---

[45] HB 155 is likely patently Unconstitutional for the same reasons that COPPA and the CDA were under the Due Process clause and is inferior to COFA, which has real teeth and is Constitutionally sound.

partnership is locked into the contract, it has to either pay the filter fee or be subjected to exposure to harmful pornography.

90. On April 26, 2016, the Plaintiff's met at the offices of Xmission about entering into a contract for Bravo Property. Xmission stated that they would comply with their obligation to provide a filter under Utah Code 76-10-1231(1)(a)(b) but that the Plaintiffs would be charged an installation fee as authorized under Utah Code 76-10-1231(3)(a)(b). If Utah Code 76-10-1231(1)(a)(b) did not exist, Xmission would not have agreed to provide a filter. If Utah Code 76-10-1231(3)(a)(b) did not not exist, Xmission would not be charging the Plaintiffs a fee.

91. When Xmission promised to charge the Plaintiffs a filter fee they were doing so under the guidance of Utah Code 76-10-1231(3)(a)(b)  and acting under the color of law, despite the religious beliefs held by the Plaintiffs.

92. The Plaintiffs have written letters and sent out invitations to Pastors, missionaries, and the little sisters of the poor to commune and gather with them at the properties that they have warranted are clean environments. At least some of the religious individuals that the Plaintiffs have invited to rent and assemble at the property have accepted their offer, placing the Plaintiffs in a position where they could breach their contracts.  If the Plaintiffs do not pay the filter fee, then they will be in breach and their target audience might be refuse to assemble and gather to pray for the good of humanity and that the Nation will move out of darkness in the area of sex. The Plaintiffs are in a state of irreparable harm due to a fee that should be shifted onto the proponents of obscenity.

## VII. SECTION CAUSES OF ACTION

### A.  FIRST CLAIM FOR RELIEF: VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT SUBSTANTIAL BURDEN

93. Plaintiffs incorporate by reference all preceding paragraphs.

94. The Plaintiff's sincerely held religious beliefs prohibit them from consuming pornography and from supporting child exploitation, human trafficking, and violence towards women that connects with pornography.

95. Utah Code Ann. § 76-10-1231(1)(a)(b) is unconstitutional because it forces the Plaintiffs to ask to have a filter installed that will allow the ISP and Device Makers to comply with obscenity laws. Utah Code Ann. § 76-10-1231(3)(a)(b) is unconstitutional because it taxes the Plaintiffs with an installation fee. Both of these statutes chill religious exercise.

96. Utah Code Ann. § 76-10-1231(3)(a)(b) exposes the Plaintiffs to fines for their religious exercise and imposes a substantial burden on the Plaintiff's religious exercise, when taken with Utah Code Ann. § 76-10-1231(1)(a)(b).

97. Utah Code Ann. § 76-10-1231(3)(a)(b) does not further a compelling government interest.

98. Utah Code Ann. § 76-10-1231(3)(a)(b)  is not narrowly tailored to any government interest.

99. Utah Code Ann. § 76-10-1231(3)(a)(b) and Utah Code Ann. § 76-10-1231(1)(a)(b) are not the least restrictive means for furthering the Defendant's stated interest. (The COFA legislation proposed by the Plaintiffs is).

100. Utah Code Ann. § 76-10-1231(3)(a)(b) and Utah Code Ann. § 76-10-1231(1)(a)(b), when taken together and individually violate the Plaintiff's right secured to them by the Religious Freedom and Restoration Act, 42 U.S.C § 2000bb *et seq.*

101. Absent injunctive and declaratory relief against these statutes, the Plaintiffs have been and will continue to be harmed.

**B. SECOND CLAIM FOR RELIEF: FREE EXERCISE SUBSTANTIAL BURDEN**

102. Plaintiffs incorporate by reference all preceding paragraphs. Utah Code Ann. §

76-10-1231(3)(a)(b) violates fundamental liberties that are protected by the Free Exercise Clause

of the First Amendment to the United States Constitution, both on its face and as applied to the

Plaintiffs.

103. The Plaintiff's sincerely held religious beliefs prohibit them from providing supporting

human trafficking, violence towards women, and child exploitation that stems from interfacing

with pornography on filterless devices.

104. Neither Utah Code Ann. § 76-10-1231(1)(a)(b) nor Utah Code Ann. § 76-10-1231(3)(a)(b)

are neutral because the Plaintiffs are tasked with the burden of asking that ISPs and Device

Makers install a filter, which then exposes the Plaintiffs to an installation fee.

105. Utah Code Ann. § 76-10-1231(3)(a)(b) is not neutral and generally applicable. Indeed, the

historical context of its passage demonstrates that the law was intended to promote obscene

speech at the expense of religious speech, as a result of kowtowing to the Tech Enterprise.

106. Utah Code Ann. § 76-10-1231(3)(a)(b) is not supported by a compelling state interest, and

is not narrowly tailored in pursuit of state interests. Utah Code Ann. § 76-10-1231(3)(a)(b) and

Utah Code Ann. § 76-10-1231(1)(a)(b) are not the least restrictive means for regulating religious

speech.

106. The statutes create government-imposed coercive pressure on the Plaintiffs to change or

violate their religious beliefs.

107. The statutes expose the Plaintiffs to fines for their religious exercises. The statutes impose a

substantial burden on the Plaintiffs' religious exercise.

108. Utah Code Ann. § 76-10-1231(3)(a)(b) further violates fundamental liberties by denying Christians the right to organize their private businesses relations in conformity with their long-established religious beliefs shared by their prospective target clients.

109. Utah Code Ann. § 76-10-1231(3)(a)(b) prioritizes the religion of moral relativism over Christianity as discussed in a manner that is dehumanizing and depersonalizing.

110. Absent injunctive and declaratory relief against the statutes, the Plaintiffs have been and will continue to be harmed.

## C. THIRD CLAIM FOR RELIEF: FREE SPEECH

111. Plaintiffs incorporate by reference all preceding paragraphs. While obscene speech is not protected speech, Christian speech is.

112. At least on the surface level - while the state had its heart in the right place by regulating the ISPs and Device Makers by making them provide filters on demand by the consumers, the state errored in authorizing the Tech Enterprise to charge a filter installation fee. The state should make the Internet Service Providers charge a filter deactivation fee.  Utah Code Ann. § 76-10-1231(1)(a)(b) was the basis for the Xmission providing the filter, and Utah Code Ann. § 76-10-1231(3)(a)(b) was the basis for charging the Plaintiffs a filter fee.

113. The Plaintiffs should not be subject to a state authorized fee for expressing their desire to not be exposed to pornography on filterless devices that distribute false misleading domain names and are defectively designed to encourage exposure to pornography and prostitution hubs.

114. Many Christians in the state of Utah do not get filters installed because they do not want to go through the extra hassle of doing so and they do not know how the technology works because they do not have a degree in computer science; further, the filter installation fee discourages

them consumers from having the filter installed. It is as if the state is telling religious people that they are unusual or second class citizens, depriving them of a dignity interest vested in the bill of rights.

115. Utah Code Ann. § 76-10-1231(3)(a)(b), as applied in this case and as interpreted by the Defendants, violates the First Amendment to the United States Constitution.

### D. <u>FOURTH CLAIM FOR RELIEF: FREEDOM OF ASSOCIATION</u>

116. The Plaintiffs re-incorporate all prior paragraphs.  Utah Code Ann. § 76-10-1231(3)(a)(b) violates the right of association protected under the First Amendment to the United States Constitution. Plaintiff Gunter has children. These children could be exposed to obscenity on property Alpha and Bravo if the Plaintiffs do not pay the filter fee. Some of the pastors and missionaries who will be staying at the property have children, they might be compelled not to rent from the Plaintiffs if they do not incur the cost of the state authorized filter fee. Furthermore, their children could be exposed to harmful content on the property unless the Plaintiffs pay a filter fee.

117. The Plaintiffs intend to invite groups like The Little Sister For the Poor to stay at the property and to commune with them. These kinds of groups might feel compelled to not gather at the properties Alpha and Bravo because they could be exposed to obscene content that violates religious convictions, beliefs, and standards.

118. While the state of Utah deserves much respect for regulating ISPs and Device Makers, the state knew or should have known that it was putting the fee onto the wrong class of people. While Christian speech is protected, obscenity is not. The fee must shift.

119. Utah Code Ann. § 76-10-1231(3)(a)(b), both as written and as applied in this case, violates the First Amendment to the United States Constitution.

## E. FIFTH CLAIM FOR RELIEF: VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION FREEDOM OF SPEECH - COMPELLED SPEECH

120.  Plaintiffs incorporate by reference all preceding paragraphs.

121. The Plaintiffs believe and profess that consuming and interfacing with pornographic content distributed by Device Makers and ISPs violates their religious beliefs.

122. Utah Code Ann. § 76-10-1231(1)(a)(b) and Utah Code Ann. § 76-10-1231(3)(a)(b) place the Plaintiffs who are already under one contract with one ISP and have contractual duties owed to third parties to either allow themselves and their tenants to be exposed to pornography or to undertake an extra burden and pay a fee to avoid expose and force support for gay speech and human trafficking.

123. The government is kowtowing to ISPs and Device Makers at the expense of the families for reasons that are related to weak character and a refusal to think. The Statutes compel speech that is not narrowly tailored to a compelling government interest.

124. Utah Code Ann. § 76-10-1231(1)(a)(b) and Utah Code Ann. § 76-10-1231(3)(a)(b) would compel the Plaintiffs to cooperate in the support of human trafficking in a manner that violates their religious beliefs or undergo have to undertake burdens and fees.

125. The Defendants are tasked with enforcing these provisions of the code and have violated the Plaintiffs first amendment rights under the United States Constitution.

190. Absent injunctive and declaratory relief against the statutes, the Plaintiffs have been and will continue to be harmed.

## F. SIXTH CLAIM FOR RELIEF: ESTABLISHMENT OF RELIGION

126.  Plaintiffs incorporate by reference all preceding paragraphs.  Utah Code Ann. §
76-10-1231(1)(a)(b) and Utah Code Ann. § 76-10-1231(3)(a)(b) violates fundamental liberties
protected by the Establishment Clause of the First Amendment to the United States Constitution,
both on its face and as applied to the Plaintiffs.

127. There is no doubt that moral relativism is a religion. For those who say that "doctrine does
not matter" advance a "doctrine" under a jaded sense of moral superiority that is itself entirely
imperialistic and grossly inferior.  Now that it is 2016, it is clear that keeping religion out of the
public square is impossible. The real question is "which religious doctrine and figures should be
protected, and which ones should be declared as imposters. The evidence suggests that Jesus
Christ was who he said he was, and self-proclaimed god's of relativism, like President Obama
and Secretary of State Clinton are nothing more than arrogance misguided imposters, who
themselves are a substantial threat to National security interest and human flourishing from the
inside out.

128. There are two types of people in the world, people who make exclusive truth claims and set
up binaries, and those who do it but do not not that they are. It takes a whole lot of faith to
believe that there is no God, that humans are merely a bundle of chemicals, accidental particles,
and animated pieces of meat.

130.  The fact is that all people are religious. But not all unproven faith based assumptions and
truth claims are equal. The Constitution is crafted to protect the people who subscribe to the right
set of truth claims.  "Our Constitution was made only for a moral and religious people. It is
wholly inadequate to the government of any other. "- John Adams

131. Under President Obama's dismal leadership, moral relativism is the majority religion in the United States, which has amounted to an internalized treasonous take over by trick. The Plaintiffs represent an insular minority of both religious and cultural believers who are viewed as immoral under majoritarian "love wins gay gestapo relativist, who advance the doctrine of tolerance until you disagree with them," who have maliciously infiltrated our government, while lacking the competency to understand or even define what justice is.[46]

132. The State's desire to charge consumers a fee to avoid obscenity is set with a scheme to force convert the citizens of Utah to drop their religious conviction and instead buy into this group think mindset that there is no such thing as absolute truth. The fact that academia and the liberal media have aided and abetted in the promotion of a truth allergy in hopes of legislating away shame only strengthens the Plaintiffs positions. There is no question that there is a agenda at work to normalize gay lifestyle and that exposure to pornography on filterless devices helps advance that reckless conquest.

133. Utah Code Ann. § 76-10-1231(1)(a)(b) and Utah Code Ann. § 76-10-1231(3)(a)(b), both as written and as applied in this case, violates the First Amendment to the United States Constitution.

### G. SEVENTH CLAIM FOR RELIEF: DUE PROCESS

---

[46] The IRS's targeting of Christian conservative groups under Louis Learner is direct evidence that the religion of moral relativism is the Supreme theocratic ideology at the top. The fact that the DOJ under Loretta Lynches feckless leadership demonstrates with convincing clarity that the President is proactively working to establish a caliphate of relativism. Of course, relativism produces self-absorption, and self-absorbed people typically vote Democrat because they are under the same kind of darkness that Dr. King talked so much about in the Civil Rights movement of 1964.

134.  Plaintiffs incorporate by reference all preceding paragraphs.  Utah Code Ann. §

76-10-1231(1)(a)(b) and Utah Code Ann. § 76-10-1231(3)(a)(b) violate fundamental liberties

that are protected by the Due Process Clause of the Fourteenth Amendment to the United States

Constitution, both on its face and as applied to the Plaintiffs. Religious liberty is a fundamental

right.

135. As stated in *Lawrence v. Texas*, 539 U.S. 558, 562 (2003):

Liberty protects the person from unwarranted government intrusions into a dwelling or other
private places. In our tradition the State is not omnipresent in the home. And there are other
spheres of our lives and existence, outside the home, where the State should not be a dominant
presence. Freedom extends beyond spatial bounds. Liberty presumes an autonomy of self that
includes freedom of thought, belief, expression, and certain intimate conduct. The instant case
involves liberty of the person both in its spatial and more transcendent dimensions.

By allowing ISPs to sell their products without filters and by authorizing them to charge a filter

installation fee, interferes with a fundamental privacy interest possessed by the Plaintiffs.

136.  Utah Code Ann. § 76-10-1231(3)(a)(b) punishes the Plaintiffs for trying to shield

themselves from exposure to unprotected stimuli that encourages sexual voyeurism, which could

lead to the hiring of prostitutes and other sexually criminal behavior.  Utah Code Ann. §

76-10-1231(3)(a)(b)interferes with intent by punishing the Plaintiffs for wanting to shield

themselves from toxic influences that are designed to inspire false permission giving beliefs and

criminalized conduct. Filterless ISPs could subject the Plaintiffs to force encounters with child

pornography, which could cause them to acquire criminal liability despite their lack of intent to

interface with illegal substances. By not allowing the Plaintiffs to filter without being subject to a

fee pushes them for wanting to keep themselves from any kind of criminal liability, which afforts

their due process rights. The state is infringing on the Plaintiff's and everyone's prospective

criminal intent that most do not want to have any opportunity to cultivate.

137. The evidence is overwhelming that pornography interferes with reproductive, mental, relationsional, sexual, and emotional health of consumers. Authorizing ISPs to charge a filter deactivation fee further denies individuals the protected right to freely make personal decisions relating to procreation, contraception, family relationships, and child rearing.

138. Utah Code Ann. § 76-10-1231(3)(a)(b) also violates the Due Process Clause as void for vagueness because it fails to give adequate guidance to ISPs as to the scope of the filter fee and its size - lacking in "appropriate definiteness."

## H. EIGHTH CLAIM FOR RELIEF: EQUAL PROTECTION

139. Plaintiffs incorporate by reference all preceding paragraphs. Utah Code Ann. § 76-10-1231(3)(a)(b) violates fundamental liberties that are protected by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, both on its face and as applied to the Plaintiffs.

140. Utah Code Ann. § 76-10-1231(3)(a)(b) has been used to single out Christians persons of religious conviction by forcing them to pay filter fees for merely practicing their religion and trying to shield themselves, their children, their guests, and the children of their guest from a more damaging kind of obscenity than that contemplated by the much of obscenity code that governs bricks and mortar sexual oriented businesses (SOBs).

141. Utah Code Ann. § 76-10-1231(3)(a)(b) can be used to discourage religious consumers from filtering. If the State is serious about solving the public health crisis memorialized in SCR 9, it will make the Tech Enterprise sell its products with filters that could only be removed once the purchaser provided proof of idea and verified their age with the retailer at checkout, shifting the burden off of people of conviction and placing it onto those who subscribe to a truth allergy.

142. Utah Code Ann. § 76-10-1231(3)(a)(b) also treats similarly situated persons differently based on religious distinctions. Moral relativist rewrite the Bible to fit their savage lifestyle, whereas Christians do not have the arrogance to do that. The God of the Bible is hardly a kill joy, he merely offers commands that accord with human flourishing, and the state has a fundamental duty to parallel its policies with those commands as a matter of natural civil and human rights.

143. While there are no valid religions that advance the plausibility of porn speech, nearly all of the major religions discourage against self-sex for the same reason they do in regards to same-sex conduct - such forms of sex violate the truth about our nature or the givenness of our nature in a manner that is self-evident.

192. The disparate treatment given Christians by greedy corporations is based on historical and animus fostered by religious relativists toward Christians, who are an insular minority in both the State of Utah and globally, when it comes to the economy.

## I. CAUSE OF ACTION UNDER 42 U.S.C. § 1983

193.  Plaintiffs incorporate by reference all preceding paragraphs.  Insofar as they are enforcing the terms of Utah Code Ann. § 76-10-1231(3)(a)(b), the Defendants, acting under color of state law, are depriving and will continue to deprive the Plaintiffs of numerous rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

## VIII. SECTION: PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

1. Enter an order declaring that Utah Code Ann. § 76-10-1231(1)(a)(b) and Utah Code Ann. § 76-10-1231(3)(a)(b) violates the Due Process and Equal Protection Clauses of the Fourteenth

Amendment, the Free Exercise, Establishment, Free Speech, and Freedom of Association Clauses of the First Amendment, and 42 U.S.C. § 1983.

2. Order a preliminary and permanent injunction enjoining enforcement or application of Utah Code Ann. § 76-10-1231(1)(a)(b) and Utah Code Ann. § 76-10-1231(3)(a)(b) against the Plaintiffs and all of the other citizens in Utah, finding that ISPs are not encouraged and authorized to charge a filter installation fee in step with the State's guidance, recommendation, and instruction and that Device Makers and ISPs should come with filters already installed.

3. Award the Plaintiffs reasonable attorneys' fees and costs incurred in maintaining this action pursuant to 42 U.S.C. § 1988.

4. Award such other relief as it may deem just and proper.

5. That the Court permit Plaintiff Sevier to ECF filing access.

Respectfully submitted,

/s/Chris Sevier Esq./
9 Music Square South 247
Nashville, TN 37203
355 North 300 West
Salt Lake City, Utah 84103
(615) 500 4411
ghostwarsmusic@gmail.com
BPR#026577


/s/John Gunter Jr./
Clean Services Foundation
313 South 740 East
Suite 1


John Gunter, Founder of Clean Services Foundation